NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

FALESA HILLMAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

---

Civil Action No. 16-3328 (SRC)

**OPINION**

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Falesa Hillman ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be vacated.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning October 15, 2010. A hearing was held before ALJ Jack Russak (the "ALJ") on June 17, 2014, and the ALJ issued an unfavorable decision on September 18, 2014, finding Plaintiff not disabled. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of September 18, 2014, the ALJ found that, at step three, Plaintiff did not

meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, with certain limitations. At step four, the ALJ also found that Plaintiff did not retain the residual functional capacity to perform her past relevant work. At step five, the ALJ consulted a vocational expert and concluded that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on several grounds, but this Court need only reach the argument that succeeds: the ALJ's residual functional capacity determination at step four is not supported by objective medical findings, but instead by the ALJ's lay opinion about the medical evidence.

At step four, the ALJ described in detail a number of pieces of medical evidence. The ALJ stated a detailed conclusion in a subheading in his decision: the claimant retains the residual functional capacity to perform sedentary work, with certain additional limitations: 1) she can only occasionally climb ramps and stairs, or kneel, but she can never crawl; 2) she is limited to work that allows her to be off-task for not more than 5% of the workday; 3) she has certain environmental limitations; and 4) she is limited to performing simple, routine tasks. The ALJ then describes the medical evidence for five pages. At the end, he simply states, "the above residual functional capacity assessment is supported by the evidence of record as a whole." (Tr. 23.) This is followed by a few vague, general statements (e.g., "The above residual functional capacity assessment is also consistent with the claimant's own reported retained physical

2

capacity for performing activities of daily living.") (Id.)

This determination is not amenable to meaningful review. The record contains a wealth of evidence relevant to Plaintiff's residual functional capacity, but the decision does not explain how the ALJ weighed the various pieces of evidence nor, crucially, how the ALJ reconciled the conflicting evidence of record. The ALJ also does not explain how he arrived at the conclusion that Plaintiff is limited to performing simple, routine tasks, nor the conclusion that she is limited to work allowing her to be off task for no more than 5% of the workday. In short, the record contains a complex and conflicting array of medical evidence, and the ALJ arrived at a somewhat complex residual functional capacity determination, but he did not sufficiently explain how he got from the evidence to the conclusions to allow this Court to meaningfully review the determination.

An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). In the present case, the ALJ's decision does not contain sufficient explanation of his findings to permit meaningful review. The ALJ's determination at step four is not amenable to meaningful review and must be vacated, pursuant to Burnett v. Commissioner of SSA, 220 F.3d 112, 119 (3d Cir. 2000).

The omission of sufficient explanation stands out most with regard to the conclusion that Plaintiff retains the residual functional capacity for sedentary work. The ALJ reviewed the records from Plaintiff's treating physician, Dr. Beaty. Although the ALJ pointed out many of Dr. Beaty's findings, he did not mention that Dr. Beaty concluded that Plaintiff could sit no more

than 10 minutes at a time (Tr. 464) or that Dr. Beaty concluded that Plaintiff's pain would "frequently" interfere with her attention and concentration at work ("frequently" being defined as the range of 34% to 66% of an 8-hour workday.) (Tr. 464.) These findings appear to contradict the ALJ's conclusions in part, but the ALJ did not explain how he reconciled this evidence with other evidence to reach his conclusions. The ALJ also did not address Dr. Beaty's assessment that Plaintiff was likely to absent from work four or more days per month (the high end of that scale.) (Tr. 465.) The ALJ did not discuss how he reconciled this piece of evidence with his determination with Plaintiff could perform sedentary work.

The ALJ also reviewed records from consultative examiner Dr. Aldea, who completed a questionnaire evaluating Plaintiff's residual functional capacity. (Tr. 450-55.) On this questionnaire, Dr. Aldea stated that Plaintiff cannot hear and understand simple oral instructions, and that she cannot avoid ordinary workplace hazards, such as boxes on the floor. (Tr. 454.) Dr. Aldea found significant limitations to Plaintiff's use of her hands in the workplace. (Tr. 452.) Dr. Aldea stated that Plaintiff cannot work an 8-hour day, and that she could sit for no longer than three hours in an 8-hour workday. (Tr. 451.) While the ALJ cited the finding of the limitation to three hours of sitting, he appears to have overlooked the statement that Plaintiff cannot work an 8-hour day. The ALJ stated that he gave Dr. Aldea's opinion some weight, but found that it was "more restrictive than indicated by treatment records in evidence, as well as Dr. Aldea's own examination findings." (Tr. 20.)

The ALJ also reviewed an evaluation by Dr. Sheikh, who appears to have treated Plaintiff for 6 years, and who completed a questionnaire evaluating Plaintiff's residual functional capacity. (Tr. 471.) Although the ALJ pointed out many of Dr. Sheikh's findings, he did not

4

mention that Dr. Sheikh concluded that Plaintiff could sit no more than 30 minutes at a time (Tr. 472) or that Dr. Sheikh concluded that Plaintiff's pain would "frequently" interfere with her attention and concentration at work ("frequently" being defined as the range of 34% to 66% of an 8-hour workday.) (Tr. 472.) These findings appear to contradict the ALJ's conclusions in part, but the ALJ did not explain how he reconciled this evidence with other evidence to reach his conclusions. The ALJ made a small mistake in stating that Dr. Sheikh found that could sit for a total of two hours in an 8-hour workday, as Dr. Sheikh found that Plaintiff could sit *less* than two hours in an 8-hour workday. (Tr. 473.)

As already stated, this Court has found that the ALJ did not explain his reasoning sufficiently to allow meaningful review of his residual functional capacity determination. Examination of the record, however, has left this Court with important questions, especially about the ALJ's determination that Plaintiff retains the residual functional capacity for sedentary work. As discussed, the record contains evaluations from two treating physicians and one consultative examiner who all concluded that Plaintiff cannot sit for longer than three hours at a time. Two of the three physicians stated that Plaintiff could not sit for more than three hours total in an eight-hour workday.

This Court does not understand how the ALJ reached the contrary conclusion that Plaintiff retained the residual functional capacity for sedentary work.[1] The written decision raises the possibility that the ALJ may have substituted his own lay opinion for the well-documented opinions of the medical experts. This is particularly problematic when the medical

---

[1] Nor does this Court understand how the ALJ concluded that Plaintiff would be off task for not more than 5% of the workday, when both treating physicians stated that Plaintiff's pain would interfere with her concentration 34% - 66% of the day.

5

experts are treating physicians. In Plummer v. Apfel, the Third Circuit concisely summarized the principles relevant to this case:

> [A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.
>
> Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). The ALJ's residual functional capacity determination does not follow these quoted principles. The ALJ's decision does not articulate the contradictory medical evidence that led the ALJ to reject important parts of the opinions of the treating physicians.

Plummer allows an ALJ to reject a treating physician's opinion outright only on the basis of contradictory medical evidence. The Third Circuit has further explained: "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). It appears possible that the ALJ gave the three physicians' opinions lesser weight based on his own lay opinion about the underlying data reported by the physicians.

The bottom line, however, is that this record contains ample evidence that Plaintiff does not retain the residual functional capacity to perform an 8-hour day of sedentary work. If there is

substantial evidence in the record to the contrary, the ALJ's decision does not clearly point to it. Nor does the Commissioner's opposition brief point it out. This Court cannot conclude that the Commisioner's decision is supported by substantial evidence.

The ALJ's residual functional capacity determination at step four does not contain sufficient explanation to allow meaningful review. For this reason, this Court finds that the Commissioner's decision is not supported by substantial evidence, and the Commissioner's decision is vacated and remanded for further proceedings in accordance with this Opinion.

      s/ Stanley R. Chesler  
    STANLEY R. CHESLER, U.S.D.J.

Dated: June 14, 2017